UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GREEN SOLUTIONS RECYCLING, LLC, | Case No. 3:16-cv-00334-MMD-CBC |
| Plaintiff, | ORDER |
| v. | |
| RENO DISPOSAL COMPANY, INC., *et al.*, | |
| Defendants. | |

## I.  SUMMARY

This case is about the City of Reno's authority to grant a monopoly for the collection and disposal of certain recyclable materials. Plaintiff Green Solutions Recycling, LLC ("GSR") contends that the City has no such authority and unlawfully has restrained trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Act"). Before the Court are three motions for summary judgment: (1) Defendants Reno Disposal Company, Inc. ("Reno Disposal") and Waste Management of Nevada, Inc.'s ("WMON") motion for summary judgment regarding lack of subject matter jurisdiction/standing ("Defendants' Jurisdictional Motion") (ECF No. 105); Defendants Reno Disposal and WMON's motion for summary judgment regarding enforceability of franchise agreement ("Defendants' Merits Motion") (ECF No. 106); and Plaintiff's motion for partial summary judgment ("Plaintiff's Motion") (ECF No. 113).[1] The Court has reviewed the relevant briefing (ECF Nos. 120, 121, 122, 123, 124, 126) and held a hearing on these motions on December 18,

///

///

---

[1]The City filed a joinder to Defendants' Jurisdictional Motion and Defendants' Merits Motion. (ECF No. 107, 108.) The City also filed a joinder to Defendants' opposition to Plaintiff's Motion. (ECF No. 127.)

1   2018 (ECF No. 134). For the following reasons, the Court denies Defendants'
2   Jurisdictional Motion, grants Defendants' Merits Motion, and denies Plaintiff's Motion.

3   **II.    BACKGROUND[2]**

4          Nevada law allows the City to "[g]rant an exclusive franchise to any person" for the
5   "[c]ollection and disposal of garbage and other waste." NRS §§ 268.081, 268.083.
6   Accordingly, the City entered into an exclusive franchise agreement with Reno Disposal
7   on November 7, 2012. (ECF No. 113 at 2; ECF No. 106 at 6.) The City entered into a
8   second exclusive franchise agreement with another entity, but Reno Disposal eventually
9   acquired the franchise rights under that agreement as well. (ECF No. 106 at 6.) The Court
10  refers to both franchise agreements as the "Franchise Agreement." The Franchise
11  Agreement basically grants Reno Disposal the exclusive right to pick up and remove solid
12  waste and certain recyclable materials from commercial entities, although the Franchise
13  Agreement uses a number of terms of art that are defined in the Franchise Agreement
14  itself. (*Id.* at 10; *see also* ECF No. 113-1 at 15.)

15         Plaintiff contracted with various commercial entities in the City to pick up and
16  remove certain recyclable materials from their premises. (ECF No. 113 at 4.) Plaintiff
17  operates by providing its customers with recycling containers in exchange for payment
18  offset by a rebate. (ECF No. 106 at 12, 17.) For example, Plaintiff charged one customer
19  $440 per bin each month and provided that customer with a rebate of $2.52 per bin each
20  month. (*Id.* at 17.)

21         The City eventually took the position that Plaintiff was violating the Franchise
22  Agreement based on its view that Plaintiff's customers were essentially paying for Plaintiff
23  to remove waste when Reno Disposal had the exclusive rights to remove waste. (*See* ECF
24  No. 113 at 4.) The City informed Plaintiff's counsel that Plaintiff could pick up and remove
25  certain recyclable materials without violating the Franchise Agreement only if Plaintiff's
26  customers actually sold the recyclable materials instead of paying for them to be removed.
27  ///

28
    _____
        [2]The facts recited below are undisputed unless noted otherwise.

(*Id.*) In other words, Plaintiff's customers were essentially required to realize a net profit from the arrangement, and thus the rebate would have to exceed the container rental charges. (*See id.*) The City informed some of Plaintiff's customers that the customers were violating the Franchise Agreement. (*Id.* at 5.) In addition, counsel for Reno Disposal and WMON sent demand letters to some of Plaintiff's customers asserting that the customers were violating the Franchise Agreement. (ECF No. 113 at 7.)

Plaintiff asserts five claims for relief in its First Amended Complaint ("FAC"): (1) violation of Section 1 of the Act; (2) violation of the Commerce Clause under 42 U.S.C. § 1983; (3) violation of the Nevada Unfair Trade Practices Act, NRS § 598A.060; (4) tortious interference with contractual relationship; and (5) trespass to chattels. (ECF No. 48 at 7-11.) The Court has already dismissed Plaintiff's second claim for relief. (ECF No. 86 at 236.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

3

inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DEFENDANTS' JURISDICTIONAL MOTION (ECF NO. 105)

Defendants move for summary judgment on two jurisdictional grounds: that the Court lacks subject matter jurisdiction and that Plaintiff lacks standing. The Court finds both grounds unpersuasive for the following reasons and denies Defendants' Jurisdictional Motion.

### A. Subject Matter Jurisdiction

"In determining jurisdiction under the Sherman Act, the focus of the inquiry is the defendant's business activities." *Musick v. Burke*, 913 F.2d 1390, 1395 (9th Cir. 1990) (citing *Western Waste Serv. Sys. v. Universal Waste Control*, 616 F.2d 1094, 1097 n.2 (9th Cir. 1980)). The plaintiff "must make a showing of a substantial effect on interstate commerce generated either by [the defendant's] general business activities or by the alleged antitrust violations themselves." *Id.* (citations omitted). "To make this showing [the plaintiff] must first identify the relevant aspect of interstate commerce; it is not sufficient to presume an interrelationship of the local activity to some unspecified aspect of interstate

4

commerce." *Id.* (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980)). Then the plaintiff must demonstrate that the defendant's local activity affects some other appreciable activity demonstrably in interstate commerce. *Id.* (citing *McLain*, 444 U.S. at 242). "This effect must be, 'as a matter of practical economics . . . not insubstantial.'" *Id.* (alteration in original) (quoting *McLain*, 444 U.S. at 246). "Whether the defendant's 'activities sufficiently affect interstate commerce to create Sherman Act jurisdiction is a highly fact-based question calling for common sense judgment.'" *Id.* (citing *Mitchell v. Frank R. Howard Mem'l Hosp.*, 853 F.2d 762, 765 (9th Cir. 1988)).

Plaintiff argues that Defendants' business substantially affects interstate commerce because Defendants ship all the recyclables they collect in Nevada to a materials recycling facility in California. (ECF No. 120 at 4-5.) As evidence, Plaintiff cites to the testimony of Greg Martinelli—Defendants' employee—at the preliminary injunction hearing. (*Id.* at 5 (citing ECF No. 113-18 at 184-85).) Defendants do not dispute this evidence and instead make a number of arguments that the Court finds unpersuasive for the reasons discussed below. Accordingly, the Court finds that it has subject matter jurisdiction over Plaintiff's claim under the Act.

Defendants first make several arguments that the Court lacks subject matter jurisdiction because Plaintiff is not implicated in interstate commerce. (*See* ECF No. 105 at 14-27.) But Plaintiff correctly notes that Plaintiff's own activity is irrelevant. (*See* ECF No. 120 at 6.) Defendants' activity—not Plaintiff's—determines subject matter jurisdiction under the Act. *Musick*, 913 F.2d at 1395 (emphasis added) ("In determining jurisdiction under the Sherman Act, the focus of the inquiry is the *defendant's* business activities.").

Defendants' argument to the contrary misstates the record. Defendants assert that the Court initially found that it had subject matter jurisdiction based on Plaintiff's involvement in interstate commerce. (ECF No. 123 at 3 (citing ECF No. 47 at 2).) But in the order Defendants cite, the Court expressly found subject matter jurisdiction because Defendants' alleged conduct—not Plaintiff's—implicates interstate commerce. (ECF No. 47 at 3 (emphasis added) ("The Court finds that GSR has satisfied the Court's Order —

*Defendants' alleged conduct* under GSR's theory as explained in GSR's Response *implicates interstate commerce.*").)

Defendants further argue that the Court lacks subject matter jurisdiction because the Franchise Agreement does not apply to recyclable materials that are commodities in interstate commerce—it only applies to waste. (*See* ECF No. 105 at 12-14.) However, even if the Franchise Agreement only covers waste, Defendants do not dispute Plaintiff's evidence that Defendants ship recyclable materials out of state. (*See* ECF No. 105, 123.) Plaintiffs may rely on Defendants' general business activities as opposed to the alleged antitrust violations themselves to make a showing of a substantial effect on interstate commerce for the purpose of establishing jurisdiction. *Musick*, 913 F.2d at 1395. Accordingly, the Court finds Defendants' argument unpersuasive.

Defendants further argue that the Court lacks subject matter jurisdiction under the state-action immunity doctrine derived from *Parker v. Brown*, 317 U.S. 341 (1943). (ECF No. 105 at 13.) However, state-action immunity is a defense and does not affect the Court's jurisdiction. *See, e.g.*, *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 235 (2013) (referring to Parker immunity as a "state-action defense to price-fixing claims"). The Court thus addresses state-action immunity *infra* Section V.

Defendants further argue that the only activity at issue in this case is the collection and disposal of waste in the City, which does not implicate interstate commerce or antitrust concerns. (ECF No. 105 at 13.) Again, Defendants have not disputed Plaintiff's evidence that Defendants' general business activities have a substantial effect on interstate commerce. (*See id.*; ECF No. 123.) Accordingly, the Court finds Defendants' argument unpersuasive.

## B. Standing

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2)

the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (citations omitted).

### 1. Injury

Defendants argue that Plaintiff has not suffered a legally cognizable injury because Plaintiff has not obtained a business license from the City of Reno to "legally 'collect, transport, process, recycle or dispose of' recyclable materials." (ECF No. 105 at 28.) Defendants contend that Plaintiff cannot suffer injury if it is acting unlawfully. (*Id.*) Plaintiff argues that it is not required to obtain a license under Reno Municipal Code ("RMC") § 5.90.010 to engage in its business. (ECF No. 120 at 11.) Plaintiff further argues that the RMC has no specific licensing requirements or specific licenses for the collection, hauling, transportation, and recycling of recyclable materials. (*Id.*) Defendants do not address Plaintiff's argument in their reply and have not identified a statute or other source of authority that requires Plaintiff to obtain a license for the collection, hauling, transportation, and recycling of recyclable materials. (*See* ECF No. 123 at 9.) Accordingly, the Court finds Defendants' argument unpersuasive.

### 2. Prudential Standing

Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1179 (D. Nev. 2015) (quoting *United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007)). "The question of prudential standing is often resolved by the nature and source of the claim. Essentially, the standing question in such cases is whether the [statute] on which the claim [relies]

properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* (quoting *The Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1169 (10th Cir. 2011)).

Defendants argue that Plaintiff lacks prudential standing because "(1) the City has the authority to regulate the collection, transportation and disposal of recyclable materials that are treated as waste; (2) GSR does not buy or sell recyclable materials but instead is collecting, transporting and disposing of recyclable materials in violation of the City's Franchise Agreement; (3) GSR's activity violates the clear prohibitions in the City's Franchise Agreement and (4) even if GSR's activity did not violate the Franchise Agreement, GSR's activity in the City is illegal since GSR is not licensed or permitted to collect, transport or dispose of recyclable materials in the City." (ECF No. 105 at 30.)

Plaintiff argues that its antitrust claim falls within the zone of interests protected by the Act because Plaintiff alleges that the Franchise Agreement is a price fixing scheme. (ECF No. 120 at 15.)

The Court agrees with Plaintiff. Defendants' arguments as presented to the Court do not bear on Plaintiff's prudential standing.

Accordingly, the Court will deny Defendants' Jurisdictional Motion.

## V.   DEFENDANTS' MERITS MOTION (ECF NO. 106)

Defendants essentially argue that they are entitled to summary judgment under the state-action immunity doctrine derived from *Parker v. Brown*, 317 U.S. 341 (1943). (*See* ECF No. 106 at 22 (arguing that the Franchise Agreement does not violate the Act even though it establishes a monopoly because the City may regulate waste as a valid exercise of its police power).) In *Parker*, the Supreme Court held that the Act did not "bar States from imposing market restraints as an act of government" because the Act was not "intended to restrict the sovereign capacity of the States to regulate their economies." *Chamber of Commerce of the United States of Am. v. City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018) (quoting *Phoebe Putney*, 568 U.S. at 224). Following *Parker*, the Supreme Court has extended immunity from federal antitrust laws to "nonstate actors carrying out

8

the State's regulatory program," albeit only "under certain circumstances." *Id.* (quoting *Phoebe Putney*, 568 U.S. at 224-25).

"State-action immunity is the exception rather than the rule." *Id.* The doctrine is "disfavored" because it is at odds with "the fundamental national values of free enterprise and economic competition . . . embodied in federal antitrust laws." *Id.* (quoting *Phoebe Putney*, 568 U.S. at 225). Thus, the Supreme Court has only recognized state-action immunity "when it is clear that the challenged anticompetitive conduct is undertaken pursuant to a regulatory scheme is that is the State's own." *Id.* (quoting *Phoebe Putney*, 568 U.S. at 225). "The Supreme Court's narrow take on state-action immunity is all the more exacting when a non-state actor invokes the protective umbrella of *Parker* immunity." *Id.* (citing *Phoebe Putney*, 568 U.S. at 225).

"The Supreme Court uses a two-part test, sometimes referred to as the *Midcal* test, 'to determin[e] whether the anticompetitive acts of private parties are entitled to immunity.'" *Id.* (alteration in original) (quoting *Phoebe Putney*, 568 U.S. at 225). "First, 'the challenged restraint [must] be one clearly articulated and affirmatively expressed as state policy,' and second, "the policy [must] be actively supervised by the State.'" *Id.* (alteration in original) (quoting *Phoebe Putney*, 568 U.S. at 225).

## A.    The Clear-Articulation Test

The "inquiry with respect to the clear-articulation test is a precise one." *Id.* at 782. The relevant question is whether the regulatory structure adopted by the state specifically authorizes the conduct alleged to violate the Act. *Id.* (quoting *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 942 (9th Cir. 1996)). "The state's authorization must be plain and clear: The relevant statutory provisions must 'plainly show that the [state] legislature *contemplated* the sort of activity that is challenged,' which occurs where they 'confer express authority to take action that *foreseeably* will result in anticompetitive effects.'" *Id.* (alteration in original) (quoting *Hass v. Or. State Bar*, 883 F.2d 1453, 1457 (9th Cir. 1989)). "The state, in its sovereign capacity, must 'clearly intend[ ] to displace competition in a particular field with a regulatory structure . . . in the relevant market." *Id.*

9

(alteration in original) (quoting *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64 (1985)). Once the court determines that there is express state authorization, the court considers the concept of foreseeability, which is used to decide "the reach of antitrust immunity that stems from an already authorized monopoly, price regulation, or other disruption in economic competition." *Id.* (citation and internal alterations omitted).

The statute at issue here expressly authorizes anticompetitive conduct. *See* NRS § 268.081 (allowing municipalities to displace or limit competition in the collection and disposal of garbage and other waste). Thus, the Court must consider "whether the particular alleged anti-competitive conduct was a foreseeable result of the overall anticompetitive scheme." *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1084 (9th Cir. 2010).

It is foreseeable that NRS § 268.081 would result in a monopoly over the collection and disposal of materials whose status as "waste" is disputed because the concept of waste is subjective. For example, a commonplace item such as a disposable plastic spoon might have little value to many people but a great deal of value to someone who has no spoons. Moreover, it is not necessary that the state legislature "contemplated the precise action complained of as long as it contemplated the kind of action to which objection was made." *Mercy-Peninsula Ambulance, Inc. v. San Mateo County*, 592 F. Supp. 956, 962 (N.D. Cal. 1984), *aff'd*, 791 F.2d 755 (9th Cir. 1986) (quoting *Benson v. Ariz. State Bd. of Dental Exam'rs*, 673 F.2d 272, 276 n.8 (9th Cir. 1982)). In *Benson*, the "defendant medical examining Board was held immune under *Midcal* even though the state statute authorizing the Board to decide the manner in which licensing exams are given 'did not itself lay down all the requirements that the Board imposed.'" *Id.* (quoting *Benson*, 673 F.2d at 276 n.8). Just as in *Benson*, the City is immune under *Midcal* even though the state statute authorizing the City to grant a monopoly over the collection and disposal of garbage and other waste does not specifically list all the material that might constitute "other waste." It is clear that the Nevada legislature contemplated a monopoly on the collection and

disposal of garbage and other waste. It was not necessary—and it was probably impossible—for the Nevada legislature to list every single thing that might constitute waste.

Plaintiff argues that the Nevada legislature could not have foreseen that Defendants would regulate and peg the price of recyclable commodities as a result of NRS § 268.081. (ECF No. 113 at 30.) The Court finds Plaintiff's argument unpersuasive because it mischaracterizes Defendants' activity as price-fixing. Rather than artificially fixing prices for recyclable materials, the City has adopted a definition of waste that—as it must—incorporates monetary value to the producer: the City has defined waste as materials that the generator pays someone to take away. (ECF No. 113-5 at 4.) Any effect that the City's definition has on the price of recyclable materials is a necessary consequence of enforcing the exclusive franchise it is entitled to grant. And even if the Court accepted Plaintiff's characterization of Defendants' activity, Defendants still have not "fixed prices" in the typical sense. "Horizontal price fixing occurs when retail competitors arrange to set prices and thus interfere with free market forces." *Taggart v. Rutledge*, 852 F.2d 1290, 1988 WL 79483, at *2 (9th Cir. 1988) (citing *49er Chevrolet, Inc. v. General Motors Corp.*, 803 F.2d 1463, 1466 (9th Cir.1986)). "Vertical price fixing occurs when a supplier attempts to fix the prices charged by those who resell his products." *Id.* (citing *Gen. Cinema Corp. v. Buena Vista Distrib. Co.*, 681 F.2d 594, 597 (9th Cir.1982)). Defendants have not engaged in horizontal price fixing because they are not competitors—the City has essentially hired Reno Disposal to manage the City's waste. Defendants also have not engaged in vertical price fixing because the relationship between the City and Reno Disposal does not include a supplier or reseller.

Plaintiff further argues that NRS § 268.081—which permits the City to grant an exclusive franchise over the "[c]ollection and disposal of garbage and other waste"—does not authorize the City to limit competition over "non-discarded recyclable materials." (ECF No. 113 at 28.) In support of its argument, Plaintiff notes that the Nevada legislature has not amended NRS § 268.081 to address recyclable materials even though the Nevada

legislature defined "recyclable materials" in another statute—NRS § 444A.013. (*Id.*) Plaintiff further notes that "recyclable materials that are not treated as waste" are not "solid waste" within the meaning of another statute—NRS § 444.490—and therefore are not "other waste" within the meaning of NRS § 268.081. (*Id.*) The Court finds these arguments unpersuasive because it is foreseeable that the City would have to define "other waste" for itself in light of the term's subjectivity.

Accordingly, the Court finds that the City and Reno Disposal's anticompetitive conduct has been clearly articulated and affirmatively expressed as state policy.

## B.    The Active-Supervision Requirement

"The active supervision requirement demands . . . that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy." *Chamber of Commerce*, 890 F.3d at 787 (alteration in original) (quoting *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1112 (2015)). "Because '[e]ntities purporting to act under state authority might diverge from the State's considered definition of the public good' and '[t]he resulting asymmetry between a state policy and its implementation can invite private self-dealing,' the active-supervision requirement 'seeks to avoid this harm by requiring the State to review and approve interstitial policies made by the entity claiming immunity." *Id.* (alterations in original) (quoting *N.C. State Bd. of Dental Exam'rs*, 135 S. Ct. at 1112).

However, the active-supervision requirement does not apply when the "challenged activity is within a traditional municipal function." *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 770 F.2d 833, 838 (9th Cir. 1985) (citing *Golden State Transit Corp. v. City of Los Angeles*, 726 F.2d 1430, 1434 (9th Cir. 1984); *see also United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07CV2172 AJB, 2012 WL 12845620, at *7 (S.D. Cal. Sept. 5, 2012), *aff'd sub nom. United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002 (9th Cir. 2014) (citing *Golden State*, 726 F.2d at 1434). In addition, the active-supervision requirement does not apply when "the actor is a municipality rather than

///

12

a private party." *Chamber of Commerce*, 890 F.3d at 788. Both exceptions to the active-supervision requirement apply here.

First, the "challenged activity is within a traditional municipal function." *Grason*, 770 F.2d at 838. "[W]aste disposal is both typically and traditionally a local government function." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 344 (2007) (quoting *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 264 (2d Cir. 2001) (Calabresi, J., concurring)).

Second, "the actor is a municipality rather than a private party." *Chamber of Commerce*, 890 F.3d at 788. The actor here is the City rather than Reno Disposal and WMON because Reno Disposal and WMON are not engaged in municipal regulation. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 n.10 (1985) (citing *S. Motor Carriers*, 471 U.S. at 61) ("Where state or municipal regulation by a private party is involved, however, active state supervision must be shown, even where a clearly articulated state policy exists."). Unlike in *S. Motor Carriers*, where "four states permitted private rate bureaus, composed of common carriers, to submit rate proposals to their respective state public service commissions for approval or rejection," *id.* (citing *S. Motor Carriers*, 471 U.S. at 50-52), Reno Disposal and WMON have no authority to set pricing or in any way regulate the collection and disposal of garbage and other waste. Given that the actor here is the City, "there is little or no danger that it is involved in a private price-fixing arrangement. The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals." *Id.* (quoting *N.C. State Bd. of Dental Exam'rs*, 135 S. Ct. at 1112). Consequently, the active-supervision requirement does not apply.

Given that the challenged restraint in this case—the City's grant of a monopoly over the collection of recyclable materials that Plaintiff wishes to pick up—is clearly articulated and affirmatively expressed as state policy, state-action immunity applies. Accordingly, the Court grants summary judgment in favor of Defendants.

///

## VI.   REMAINING STATE LAW CLAIMS

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Plaintiff's FAC contained two claims that raised federal questions. (ECF No. 48 at 7-10.) The Court dismissed one of those claims (ECF No. 86 at 236) and now grants summary judgment on the other. Having resolved the federal claims in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[3] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, the Court will dismiss the state law claims without prejudice.

## VII.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' jurisdictional motion for summary judgment (ECF No. 105) is denied.

It is further ordered that Defendants' merits motion for summary judgment (ECF No. 106) is granted. The Court grants summary judgment in favor of Defendants Reno Disposal, WMON, and the City of Reno on Plaintiff's remaining federal claim for violation of Section 1 of the Sherman Antitrust Act (first claim for relief).

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 113) is denied as moot.

It is further ordered that the remaining state law claims are dismissed without prejudice.

///

---

[3]The Court also lacks independent diversity jurisdiction under 28 U.S.C. § 1332 over the remaining state law claims because all parties are citizens of Nevada. (ECF No. 48 at 2.)

The Clerk of the Court is instructed to enter judgment in favor of all Defendants and close this case.

DATED THIS 7th day of January 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE